**MARC P. BERGER**
**REGIONAL DIRECTOR**
Lara S. Mehraban
Gerald A. Gross
Preethi Krishnamurthy
Eric M. Schmidt
Thomas W. Peirce*
Attorneys for the Plaintiff
**SECURITIES AND EXCHANGE COMMISSION**
New York Regional Office
Brookfield Place
200 Vesey Street, Suite 400
New York, New York 10281-1022
(212) 336-0116 (Krishnamurthy)
*Not admitted in U.S. District Court for the E.D.N.Y.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>                    Plaintiff,<br><br>         -against-<br><br>**MICHAEL J. STARKWEATHER and ANDIAMO CORPORATION,**<br><br>                    Defendants. | **COMPLAINT**<br><br> 19 Civ. 5528<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against defendants Michael J. Starkweather ("Starkweather") and Andiamo Corporation ("Andiamo") (collectively, "Defendants"), alleges as follows:

**SUMMARY**

1.     In April 2018, Defendants Andiamo and Starkweather—a microcap issuer of publicly-traded penny stock and its chief executive officer, respectively—issued at least one materially false press release about Andiamo's business. The press release announced the "unveiling"

of a smartphone Andiamo had purportedly developed, touted the phone's technical features, and claimed that the phone was "available" for distribution. In reality, as Starkweather knew and later admitted, the purported smartphone did not exist: Andiamo had not actually had any such smartphone manufactured.

2. In the months leading up to this false press release, Starkweather and Andiamo issued four press releases touting the purported smartphone's development in order to pique investor interest in Andiamo and its purportedly forthcoming smartphone. During this prior press release campaign, Starkweather sought and received "kickbacks," as he called them, totaling over $15,000 from a stock promoter. These kickbacks supposedly represented a portion of the stock promoter's profits from selling Andiamo shares during this press release campaign.

3. The false press release, which was the culmination of the preceding press release campaign, caused the volume of trading in Andiamo stock to triple and the stock price to increase.

## VIOLATIONS

4. By virtue of the conduct alleged in this Complaint, Defendants engaged in acts, practices, and courses of business that constitute violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5].

5. By virtue of the conduct alleged in this Complaint, Defendant Starkweather aided and abetted Andiamo's violations of Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

6. By virtue of the conduct alleged in this Complaint, Defendant Starkweather is liable as a controlling person under Exchange Act Section 20(a) [15 U.S.C. § 78t(a)] for Andiamo's violations.

7. Unless Defendants are permanently restrained and enjoined, they will again engage in the acts, practices, transactions, and courses of business set forth in this Complaint, and in acts, practices, transactions, and courses of business of a similar type and object.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

8. The Commission brings this action under the authority conferred upon it by Exchange Act Section 21(d) [15 U.S.C. § 78u(d)].

9. The Commission seeks a final judgment: (a) permanently enjoining Defendants from violating Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]; (b) ordering Starkweather to disgorge all ill-gotten gains he received as a result of the violations alleged herein and to pay prejudgment interest thereon, pursuant to Exchange Act Section 21(d)(5) [15 U.S.C. § 78u(d)(5)]; (c) ordering Defendants to pay civil money penalties, pursuant to Exchange Act Section 21(d)(3) [15 U.S.C. § 78u(d)(3)]; (d) permanently prohibiting Starkweather from serving as an officer or director of any company that has a class of securities registered under Exchange Act Section 12 [15 U.S.C. § 78l] or that is required to file reports under Exchange Act Section 15(d) [15 U.S.C. § 78o(d)], pursuant to Exchange Act Section 21(d)(2) [15 U.S.C. § 78u(d)(2)]; (e) permanently prohibiting Starkweather from participating in any offering of a penny stock, pursuant to Exchange Act Section 21(d)(6) [15 U.S.C. § 78u(d)(6)]; and (f) ordering any other relief the Court may deem just and proper.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this action under Exchange Act Section 27 [15 U.S.C. § 78aa].

11. Defendants, directly or indirectly, have made use of the means or instrumentalities of interstate commerce or of the mails in connection with the transactions, acts, practices, and courses of business alleged here.

12. Venue lies in the Eastern District of New York under Exchange Act Section 27 [15 U.S.C. § 78aa]. Among other things, Starkweather, while serving as Andiamo's CEO and president, cashed three "kickback" checks drawn on a bank account located in Queens County, New York, in the Eastern District of New York.

## THE DEFENDANTS

13. **Andiamo**, a Wyoming corporation, currently has its principal office in Lansing, Michigan. In November 2017, Andiamo acquired Utopya Innovations, Inc. ("Utopya"), a privately-owned, purported "Toronto-based smartphone and technology company." From at least December 2017 through April 2018, Andiamo common stock was quoted under the symbol "ANDI" on OTC Link, an interdealer quotation and trade messaging system operated by OTC Markets Group, Inc. ("OTC Markets"). During at least the same period, Andiamo's common stock met the definition of a "penny stock" under Exchange Act Section 3(a)(51) [15 U.S.C. § 78c(a)(51)] and Rule 3a51-1 thereunder [17 C.F.R. § 240. 3a51-1], in part because the stock traded below five dollars per share.

14. **Starkweather**, age 35, lives in North Ridgeville, Ohio. From November 28, 2017 to September 6, 2018, Starkweather served as Andiamo's CEO, president, and sole officer or director.

## FACTS

**A.     The Four Press Releases Piquing Interest in the Purportedly Forthcoming Smartphone and Starkweather's Receipt of Supposed Kickbacks**

15. On December 14, 2017, Andiamo issued a press release entitled "Visionary Smartphone Company Utopya Innovations Inc. Announces Plans to Take the World by Storm." The press release was posted on OTC Markets' website page for Andiamo: https://www.otcmarkets.com/stock/ANDI/overview.

16. Noting that Utopya "was involved in a reverse acquisition" of Andiamo, the press release announced that Utopya was "planning to launch a lineup of 3 Utopya-branded smartphone

4

devices in 2018." The press release claimed that Utopya was "[w]orking closely with industry-leading smartphone manufacturers" and described some of the features of the forthcoming phones.

17. The press release quoted Starkweather, whom it described as Andiamo's president:

> The real differentiator will be in the proprietary software ecosystem that we are developing for the devices. With two highly experienced teams of software developers in both Canada and India, we are creating an experience for users that will be nothing short of spectacular.

18. At the bottom, the press release listed only one "Contact" person: Starkweather. The press release provided a phone number and email address (with the domain name "@utopya.co") for him.

19. The press release also listed Andiamo and Utopya as its "SOURCE."

20. Less than a week later, on December 20, 2017, Andiamo issued another press release, entitled "ANDI/Utopya Question and Answer," about the purported smartphone. This release was similarly posted on OTC Markets' website page for Andiamo.

21. Among other things, this second press release contained a question and answer about when the purported smartphone would be available:

> Q. When will you have the first phone ready?
>
> A. Two-part answer: we expect the phone to be available for purchase through retail channels in mid-late 2018; the first units are currently being tested/vetted.

22. This press release also quoted Starkweather: "The future is bright and we're thrilled to be able to include shareholders on our journey."

23. This press release further listed only Starkweather as a "Contact" and provided his "@utopya.co" email address.

24. Like the prior press release, this press release listed Utopya and Andiamo as its "SOURCE."

5

25. A few weeks later, on January 15, 2018, Andiamo issued a third press release, this time entitled "Canadian Smartphone Company Utopya Innovations Inc. Announces Strategic Partnership with Global IT Consulting Firm Cycloides Inc.," about the purported smartphone. This release, too, was posted on OTC Markets' website page for Andiamo.

26. This third press release announced that "Utopya Innovations Inc. (OTC: ANDI)" had "a strategic partnership with IT consulting firm, Cycloides, Inc." and that the "two companies are positioned to make waves across the Canadian tech landscape."

27. The press release represented that Utopya "has been busy making a name for itself recently, as members of its executive team attended the Consumer Electronics Show (CES) in Las Vegas, Nevada last week. The team reportedly spent much of the week in meetings…but did make it clear to investors that at least one major announcement is expected in the coming weeks…."

28. This third press release again quoted Starkweather, whom it described as Utopya's CEO:

> After an incredible week in Las Vegas, we are thrilled to formally announce our partnership with Cycloides Inc. Given our commitment to offering a unique software ecosystem on Utopya devices, we are very pleased with our decision to engage an IT consulting firm of this caliber. With the ability to leverage Cycloides' extensive software development and IT expertise, we are now more confident than ever before that Utopya will live up to its name, and much more.

29. This press release provided only one "Contact"—Starkweather's "utopya.co" email address—and listed Utopya as the press release's "SOURCE."

30. On January 18, 2018, three days after this third press release was issued, Starkweather met with a stock promoter (the "Stock Promoter"). The Stock Promoter said that he wanted to have certain Andiamo investment notes he owned converted to Andiamo shares of stock and needed Starkweather's approval for the share conversion. Starkweather said that, if the Stock Promoter sold such shares "profitably," Starkweather wanted "some sort of kickback" in return. Starkweather later

6

said he wanted 50% of the Stock Promoter's profits and that Starkweather could then "keep this thing [Andiamo's stock price] moving or at least hovering where it is now."

31. About a month later, on approximately February 15, 2018, Starkweather met with the Stock Promoter again.

32. At the meeting, Starkweather received a check for $5,500 from the Stock Promoter.

33. The Stock Promoter represented to Starkweather that the payment constituted a portion of the Stock Promoter's profits from his sales of Andiamo stock.

34. At the same meeting, Starkweather said, "[R]ock it out now. We're going to be pumping out the news soon."

35. Starkweather later cashed the check, which was drawn on a bank account in Queens County, New York.

36. On approximately March 12, 2018, Starkweather received two more checks from the Stock Promoter for $5,200 each, again supposedly constituting a portion of the Stock Promoter's profits from his sales of Andiamo stock.

37. Starkweather again cashed the checks, which were again drawn on a bank account in Queens County, New York.

38. On April 6, 2018, Andiamo issued a fourth press release about the purported smartphone on OTC Markets' website page for Andiamo. The press release was entitled "Utopya Innovations Inc., a Wholly-Owned Subsidiary of Andiamo Corp. (OTCPK: ANDI), Announces Date of Product Unveiling."

39. This press release announced:

> Utopya Innovations Inc., the wholly-owned subsidiary of Andiamo Corp. …, announces today that it plans to unveil the first smartphone in its lineup of devices ('Products') after-hours on Tuesday, April 10, 2018.

7

### B. The False Press Release "Unveiling" the Purported Smartphone

40. After the markets closed for regular trading on April 10, 2018—and while Starkweather was still Andiamo's only officer or director—Andiamo issued a press release entitled "Utopya Innovations Inc., through Andiamo Corp. (OTCPK: ANDI), Unveils its First Smartphone Device." Like the prior press releases, this press release was posted to OTC Markets' website page for Andiamo.

41. The press release claimed: "Utopya Innovations Inc. ('Company'), through Andiamo Corp. (OTCPK: ANDI), proudly announces the unveiling of its first smartphone device today, the Utopya Odyssey ('Smartphone' or 'Device')."

42. The press release provided a detailed description of certain features of the purported smartphone:

> The Utopya Odyssey is the first smartphone to be unveiled in the Company's product lineup. This 4G smartphone features an incredible 4950 mAh battery, a beautiful 6" FHD 18:9 display, dual SIM card functionality, up to 192 GB storage capacity, a 16 MP rear camera and 16 MP front camera, and 4 GB of RAM. The Android-based Device also comes equipped with facial unlock technology and a fingerprint sensor for added user security.

43. The press release then claimed that the smartphone was available for distribution: "The Utopya Odyssey is now available solely to the Company's distribution partners around the world."

44. Under "SOURCE," the press release listed only Andiamo.

45. Under "CONTACT," the press release provided no names but instead listed "Investor Relations," a phone number with an "(833)" area code, and a corporate email address: IR@utopya.co.

8

46. In reality, at the time of this press release, no Utopya smartphone existed and neither Andiamo nor Utopya had manufactured (or had a third party manufacture) any smartphone, as Starkweather knew.

47. On April 10, 2018, before this press release was issued, Andiamo's share price opened at $0.0159 per share and just over 90 million Andiamo shares traded that day in reported volume.

48. On April 11, 2018, the day after this press release was issued, over 300 million Andiamo shares traded in reported volume—over triple as many shares as the previous day—and Andiamo's share price closed at $0.0170 per share.

49. On approximately December 19, 2018, Andiamo issued a quarterly report, for the quarter ended April 30, 2018, by posting it to OTC Markets' website page for Andiamo.

50. The quarterly report provided, under "Address of the Issuer's Principal Executive Offices," an address in North Olmstead, Ohio. Under that address, the report listed Starkweather as the company's only "Contact," along with the same "833" telephone number and IR@utopya.com email address that had appeared on the bottom of Andiamo's April 10, 2018 press release.

**C.   Starkweather's Later Statements That the Smartphone Never Existed**

51. In approximately November 2018, the individual who served as Andiamo's CEO before Starkweather became Andiamo's CEO again and replaced Starkweather.

52. Shortly afterwards, this CEO confirmed that no Utopya or Andiamo smartphone existed.

53. On February 28, 2019, this CEO and Starkweather spoke about the purported smartphone.

54. The CEO told Starkweather: "There is no phone—there is no physical phones [*sic*] that I can sell right now." Starkweather replied: "There never was. What there was was the ability for

you to place an order for them [Utopya] to be the middleman. It always was a middleman scenario with software, but the software never got built. We paid Cycloids [the software company] and they never did anything. They never built anything…. They never built anything for us."

55.     Later in the same conversation, the CEO said: "I need a real phone that can be sold." Starkweather replied: "You're not going to get one because it doesn't exist until somebody puts in an order…. You have to put in an order before a real phone exists…. [T]hey [Utopya] have no money to pay for them to do the chip change over there, for the radio. They don't have the money to pay for the radio…."

## FIRST CLAIM FOR RELIEF
### Violations of Exchange Act Section 10(b) and Rule 10b-5
### (Both Defendants)

56.     Paragraphs 1 through 55 are re-alleged and incorporated by reference as if fully set forth herein.

57.     Defendants, directly or indirectly, singly or in concert, in connection with the purchase or sale of securities and by the use of the means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, knowingly or recklessly have (i) employed devices, schemes, or artifices to defraud; (ii) made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or (iii) engaged in acts, transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

58.     By reason of the foregoing, Defendants Starkweather and Andiamo, directly or indirectly, singly or in concert, have violated, and unless enjoined will again violate, Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## SECOND CLAIM FOR RELIEF
### Aiding and Abetting Violations of Exchange Act Section 10(b) and Rule 10b-5
### (Starkweather)

59. Paragraphs 1 through 55 are re-alleged and incorporated by reference as if fully set forth herein.

60. As alleged above, Andiamo violated Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

61. Starkweather knowingly or recklessly provided substantial assistance to Andiamo with respect to Andiamo's violations of Exchange Act Section 10(b) and Rule 10b-5 thereunder.

62. By reason of the foregoing, Starkweather is liable pursuant to Exchange Act Section 20(e) [15 U.S.C. § 78t(e)] for aiding and abetting Andiamo's violations of Exchange Act Section 10(b) and Rule 10b-5 thereunder and, unless enjoined, Starkweather will again aid and abet violations of these provisions.

## THIRD CLAIM FOR RELIEF
### Control Person Liability for Violations of Exchange Act Section 10(b) and Rule l0b-5
### (Starkweather)

63. Paragraphs 1 through 55 are re-alleged and incorporated by reference as if fully set forth herein.

64. As alleged above, Andiamo violated Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

65. At all relevant times, Starkweather controlled Andiamo and culpably participated in Andiamo's violations of Exchange Act Section 10(b) and Rule 10b-5 thereunder.

66. By reason of the foregoing, Starkweather is liable as a controlling person under Exchange Act Section 20(a) [15 U.S.C. § 78t(a)] for Andiamo's violations of Exchange Act Section 10(b) and Rule 10b-5 thereunder.

**PRAYER FOR RELIEF**

**WHEREFORE**, the Commission respectfully requests that the Court enter a Final Judgment:

**I.**

Permanently enjoining Defendants and their agents, servants, employees, and attorneys, and all persons in active concert or participation with any of them from violating, directly or indirectly, Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

**II.**

Ordering Starkweather to disgorge all ill-gotten gains he received directly or indirectly, with prejudgment interest thereon, as a result of his alleged violations;

**III.**

Ordering Defendants to pay civil money penalties under Exchange Act Section 21(d)(3) [15 U.S.C. § 78u(d)(3)];

**IV.**

Permanently prohibiting Starkweather from serving as an officer or director of any company that has a class of securities registered under Exchange Act Section 12 [15 U.S.C. § 78l] or that is required to file reports under Exchange Act Section 15(d) [15 U.S.C. § 78o(d)], pursuant to Exchange Act Section 21(d)(2) [15 U.S.C. § 78u(d)(2)];

V.

Permanently prohibiting Starkweather from participating in any offering of a penny stock, including engaging in activities with a broker, dealer, or issuer for purposes of issuing, trading, or inducing or attempting to induce the purchase or sale of any penny stock, under Exchange Act Section 21(d)(6) [15 U.S.C. § 78u(d)(6)]; and

VI.

Granting any other and further relief this Court may deem just and proper.

Dated: New York, New York
September 30, 2019

*[signature]*

MARC P. BERGER
REGIONAL DIRECTOR
Lara S. Mehraban
Gerald A. Gross
Preethi Krishnamurthy
Eric M. Schmidt
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
Brookfield Place
200 Vesey Street, Suite 400
New York, New York 10281-1022
(212) 336-0116 (Krishnamurthy)
Krishnamurthyp@sec.gov

Of Counsel:
Thomas W. Peirce*
Securities and Exchange Commission
New York Regional Office
Brookfield Place
200 Vesey Street, Suite 400
New York, New York 10281-1022
PeirceT@sec.gov

*Not admitted in the U.S. District Court for the Eastern District of New York