UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
SECURITIES AND EXCHANGE COMMISSION,

                Plaintiff,

      -against-

MICHAEL J. STARKWEATHER and ANDIAMO CORPORATION,

               Defendant.
-----------------------------------------------------------X

**REPORT AND RECOMMENDATION**
19 CV 5528 (LDH) (CLP)

**POLLAK**, Chief United States Magistrate Judge:

       On September 30, 2019, the Securities and Exchange Commission ("SEC") commenced this action against Andiamo Corporation ("Andiamo") and Michael J. Starkweather, Andiamo's CEO, president, and sole officer from November 28, 2017 until September 6, 2018. (Compl.[1] ¶14). In January 2021, the SEC and Starkweather reached a settlement, and the Court entered a consent judgment against Starkweather. (See ECF Nos. 26, 27, and 29). The SEC has not reached an agreement with defendant Andiamo, which has failed to appear in this matter and is in default.

       The SEC alleges that Andiamo violated 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5 and seeks an order permanently enjoining Andiamo from future violations of the securities laws and imposing a civil penalty under 15 U.S.C. § 78u(d)(3). (Compl. ¶¶ 4, 9; Pl.'s Mem.[2] at 2). The Clerk of the Court entered default against Andiamo on January 24, 2020. On April 16, 2021, plaintiff filed the instant motion for default judgment, and a month later, filed a letter with

---

[1] Citations to "Compl." refer to plaintiff's complaint, filed on September 30, 2019, ECF No. 1.

[2] Citations to "Pl.'s Mem." refer to plaintiff's memorandum of law attached to its motion for default judgment and filed on April 16, 2021, ECF No. 32-1.

1

the Court to which it attached e-mail correspondence with Andiamo's counsel making it clear that "Andiamo does not contest the default judgment motion." (Reply[3] at 1). The motion was thereafter referred to the undersigned to issue a Report and Recommendation.

The Court has jurisdiction over this matter under 15 U.S.C. § 78aa. The Eastern District of New York is the proper venue for this action because Starkweather, while acting as Andiamo's sole executive officer, cashed three "kickback" checks drawn on a bank account located in Queens County, New York.

For the reasons stated below, it is respectfully recommended that the plaintiff's motion be granted and that a default judgment be entered against defendant Andiamo.

FACTUAL BACKGROUND

Andiamo is a Wyoming corporation with its principal office in Lansing, Michigan. (Compl. ¶ 13). In November 2017, while Starkweather was still Andiamo's sole executive officer, Andiamo acquired Utopya Innovations, Inc. ("Utopya"), a privately-owned "Toronto-based smartphone and technology company." (Id. ¶¶ 13, 14). From "at least December 2017 through April 2018," Andiamo common stock was listed on a website operated by OTC Markets Group, Inc. ("OTC Markets"). (Id.) The Securities and Exchange Commission ("SEC") claims that, during that time, Andiamo's common stock met the definition of a "penny stock." (Id. (citing 15 U.S.C. § 78c(a)(51); 17 C.F.R. § 240.3a51-1)).[4]

---

[3] Citations to "Reply" refer to the SEC's May 17, 2021 Reply in Support of Motion for Default Judgment, ECF No. 34.

[4] A "penny stock" is an equity security that is neither "approved for registration and traded on a national securities exchange[,] . . . authorized for quotation on an automated quotation system sponsored by a registered securities association" nor "issued by an investment company registered under the Investment Company Act of 1940[,]" or is otherwise excluded from the definition of "penny stock" by statute or regulations circulated by the Securities and Exchange Commission. 15 U.S.C. § 78c(a)(51); accord 17 C.F.R. § 240.3a51-1.

2

On December 14, 2017, Andiamo issued a press release, which was posted on OTC Markets' website, entitled "Visionary Smartphone Company Utopya Innovations Inc. Announces Plans to Take the World by Storm." (Id. ¶ 15).[5] The press release announced that Utopya would launch "a lineup of 3 Utopya-branded smartphone devices in 2018." (Id. ¶ 16). The press release also claimed that Utopya was "[w]orking closely with industry-leading smartphone manufacturers" in developing the device. (Id.)

On December 20, 2017, Andiamo posted a second press release on the OTC Markets' website entitled, "ANDI/Utopya Question and Answer." (Id. ¶ 20). In this press release, Andiamo claimed that Utopya's smartphones would be available in mid- to late 2018 and asserted that the first "units" were being "tested/vetted." (Id. ¶ 21).

On January 15, 2018, Andiamo posted a third press release on OTC Markets' website entitled "Canadian Smartphone Company Utopya Innovations Inc. Announces Strategic Partnership with Global IT Consulting Firm Cycloides Inc." (Id. ¶ 25). In the press release, Andiamo claimed that Utopya had "a strategic partnership with IT consulting firm, Cycloides, Inc." and that the "two companies [were] positioned to make waves across the Canadian tech landscape." (Id. ¶ 26). The press release also alluded to a "major announcement" that Andiamo would make in the coming weeks. (Id. ¶ 27).

On January 18, 2018, Starkweather met with a stock promoter that sought Starkweather's approval to convert Andiamo investment notes into shares of Andiamo stock. (Id. ¶ 30). Starkweather arranged to receive a "kickback" of 50% of the stock promoter's profit if the stock promoter sold the shares "profitably." (Id.) Starkweather told the stock promoter that he could keep Andiamo's stock price "moving or at least hovering" as part of their agreement. (Id.)

---

[5] Andiamo's press releases are archived at https://www.otcmarkets.com/stock/ANDI/news.

3

On February 15, 2018, Starkweather met with the stock promoter again. (Id. ¶ 31). At this second meeting, the stock promoter gave Starkweather a check for $5,500, claiming that the payment represented "a portion of the [s]tock [p]romoter's profits from his sales of Andiamo stock." (Id. ¶¶ 32-33). At the same meeting, Starkweather said, "Rock it out now. We're going to be pumping out the news soon." (Id. ¶ 34). Starkweather cashed the check, which was drawn on a bank account in Queens County, New York. (Id. ¶ 35).[6]

On approximately March 12, 2018, the stock promoter gave Starkweather two more checks, each for $5,200, which the stock promoter again represented constituted Starkweather's kickback. (Id. ¶ 36). As with the first check, Starkweather cashed these checks, and they were drawn on a bank account in Queens County. (Id. ¶ 37).[7]

On April 6, 2018, Andiamo published a fourth press release on the OTC Markets' website entitled: "Utopya Innovations Inc., a Wholly-Owned Subsidiary of Andiamo Corp. . . . Announces Date of Product Unveiling." (Id. ¶ 38). The announcement claimed that Andiamo would unveil its smartphones on April 10, 2018. (Id. ¶ 39).

On April 10, 2018, Andiamo announced through a fifth press release on the OTC Markets' website that it had unveiled a smartphone and detailed the device's technical specifications. (Id. ¶¶ 40-42). Andiamo also claimed in the press release that the smartphone was available for distribution. (Id. ¶¶ 43-44). In fact, no such smartphone existed. (Id. ¶ 46).

Before the April 10, 2018 press release, Andiamo's common stock was traded at $0.0159 per share and approximately 90 million shares were traded that day. (Id. ¶ 47). On April 11, the day after the fifth press release, over 300 million Andiamo shares were traded, and Andiamo's

---

[6] The Complaint fails to specify to whom the Queens County bank account belonged.

[7] See note 6 supra. The Complaint also fails to specify whether this was the same account upon which the first check was drawn.

4

share price closed at $0.0170 per share. (Id. ¶ 48).

In November 2018, Starkweather was replaced as Andiamo's CEO. (Id. ¶ 51). Andiamo's new CEO learned that Andiamo had never produced a smartphone, and, in a phone conversation, Starkweather told the CEO that there "never" were any devices. (Id. ¶ 54). When the new CEO pressed for "a real phone that can be sold," Starkweather replied, "You're not going to get one, because it doesn't exist[.]" (Id. ¶ 55).

On February 24, 2020, the United States Attorney for the Eastern District of New York filed a criminal Information charging Starkweather with a single count of conspiracy to commit securities fraud. (See Information, attached as Ex. 5 to Krishnamurthy Decl.[8]). That day, Starkweather waived indictment and entered a plea of guilty to the single-count Information. (Criminal Docket at 3, attached as Ex. 4 to Krishnamurthy Decl.).

On July 20, 2021, the Honorable Pamela K. Chen, United States District Judge, sentenced Starkweather to three years of probation, including 90 days of confinement in a residential reentry center or community-based facility, and Ordered him to forfeit $15,900. (Sentencing Transcript at 1, 68-69, 73–74, attached as Ex. 6 to Krishnamurthy Decl.). In determining what sentencing factors applied to Starkweather under the Federal Sentencing Guidelines, Judge Chen found that a preponderance of the evidence supported that Starkweather, "at a minimum[,] knew that the statements" contained in the April 10, 2018 press release "were misleading" and "were clearly fraudulent." (Id. at 39). Judge Chen reasoned that the fact that Starkweather orchestrated an illegal kick-back scheme contingent on Andiamo's stocks increasing in value, and that Andiamo's share price and the volume of its traded shares increased after the press releases,

---

[8] Citations to "Krishnamurthy Decl." refer to Preethi Krishnamurthy's declaration filed in support of plaintiff's motion for default judgment on April 16, 2021, ECF No. 32-2.

reinforced that Starkweather knew that the press release was fraudulent. (Id. at 40-41).

On January 19, 2021, the Clerk of the Court entered a consent judgment against Starkweather, permanently enjoining him from, among other things, committing future violations of the securities laws and from acting as an officer or director of a publicly traded company. (Consent Judgment at 1-2, ECF No. 29).

When defendant Andiamo failed to answer or otherwise respond to the Complaint filed by the SEC, the Clerk of the Court entered a default against Andiamo on January 24, 2020. The SEC now moves for default judgment against defendant Andiamo, seeking to permanently enjoin Andiamo and its officers, agents, servants, employees, attorneys, and "other persons in active concert or participation with Andiamo," or any of the individuals previously described, from future violations of 15 U.S.C. § 78j(b) and 17 C.F.R. 240.10b-5. The SEC also seeks an Order imposing a $150,000 civil penalty under 15 U.S.C. § 78u(d)(3). (See Proposed Default Judgment as to Andiamo Corporation at 2-3, attached as Ex. 15 to Krishnamurthy Decl., ECF No. 32-17)

## DISCUSSION

A. Default Judgment Standard

Federal Rule of Civil Procedure 55 sets forth a two-step process in which a default, and then a default judgment, is entered. See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993). First, the Clerk of Court enters the default pursuant to Rule 55(a) by recording a notation of the party's default on the docket maintained by the Clerk. See id.; Fed R. Civ. P. 55(a) (providing that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default"). Second, after the Clerk of Court enters a default against a party,

6

if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the court may enter a default judgment. See Fed. R. Civ. P. 55(b).

The Second Circuit has warned that default judgment is an extreme remedy that should be used only when the need to move a case forward expeditiously outweighs a party's right to be heard before a court of law. See Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981). When evaluating whether to grant a default judgment, the Court must weigh the costs of prolonged litigation against offering "litigants a reasonable chance to be heard." Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96; see also Meehan v. Snow, 652 F.2d at 277. It is well-settled that defaults are "generally disfavored" and "doubts should be resolved in favor of the defaulting party." Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96. As such, courts should take great care in entering default judgment, and ensure, if possible, that both parties have their cases judged on the merits. Id. It follows that a plaintiff is not entitled to a default judgment as a matter of right simply by virtue of a defendant's procedural default. See Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

The Court has significant discretion to consider a number of factors in deciding whether to grant a default judgment, including: (1) whether the grounds for default are clearly established; (2) whether the claims were pleaded adequately in the complaint, thereby placing defendants on notice of the relief sought, see Fed. R. Civ. P. 54(c) (providing that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"); Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96; cf. King v. STL Consulting, LLC, No. 05 CV 2719, 2006 WL 3335115, at *4-5 (E.D.N.Y. Oct. 3, 2006) (holding that Rule 54(c) is not violated when a court awards damages that accrued during the pendency of a litigation, so

7

long as the complaint provided notice that the plaintiff may seek such damages); and (3) the amount of money potentially involved—the more money involved, the less justification for entering default judgment. Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992). Additionally, "the Court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff[s] ha[ve] been substantially prejudiced by the delay involved, and whether the default judgment may have a harsh effect on the defendant[s]." Pacific M. Int'l Corp. v. Raman Int'l Gems, Ltd., 888 F. Supp. 2d 385, 393 (S.D.N.Y. 2012) (internal citations omitted).

The plaintiff bears the burden of establishing its entitlement to recovery. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993). Upon entry of default, defendants are deemed to have admitted all well-pleaded factual allegations in the complaint pertaining to liability, but not legal conclusions or allegations relating to damages. Id.; Advanced Capital Commercial Grp., Inc. v. Suarez, No. 09 CV 5558, 2013 WL 5329254, at *3 (E.D.N.Y. Sept. 20, 2013). It remains the plaintiff's burden to demonstrate that the uncontroverted facts establish each defendant's liability on each cause of action asserted. Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009). In determining whether the plaintiff has met that burden, however, the Court draws all "reasonable inferences from the evidence offered" in plaintiff's favor. Id. (quoting Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)).

B. Default Judgment

Section 78j(b) of Title 15, United States Code and 17 C.F.R. § 240.10b-5 "prohibit making any material misstatement or omission in connection with the purchase or sale of any security." Halliburton Co. v. Erica P. John Fund, Inc., 573 U.S. 258, 267 (2014). As relevant

8

here, in order to establish liability under these provisions, the SEC must show that the defendant: "(1) made a material misrepresentation[;] . . . (2) with scienter; (3) in connection with the purchase or sale of securities." See Securities Exch. Comm'n v. Monarch Funding Corp., 192 F.3d 295, 308 (2d Cir. 1999) (citing Securities Exch. Comm'n v. First Jersey Securities, Inc., 101 F.3d 1450, 1467 (2d Cir. 1996)).

A misrepresentation is "'material' 'if there is a substantial likelihood that a reasonable investor would consider it important in deciding how to invest.'" Securities Exch. Comm'n v. Mayhew, 121 F.3d 44, 51 (2d Cir. 1997) (quoting Basic Inc. v. Levinson, 485 U.S. 224, 231 (1988)) (internal citations, quotation marks, and brackets omitted)). This does not mean, however, that a reasonable investor "would necessarily change his investment decision based on the information, as long as a reasonable investor would have viewed it as significantly altering the 'total mix' of information available." Id. at 52 (citing TSC Indus. v. Northway, 426 U.S. 438, 449 (1976); Flynn v. Bass Bros. Enters., 744 F.2d 978, 985 (3d Cir. 1984)). Thus, material facts include those "which affect the probable future of the company and those which may affect the desire of investors to buy, sell, or hold the company's securities" and any fact that, "in reasonable and objective contemplation[,] might affect the value of the corporation's stock or securities." Id. (quoting Securities Exch. Comm'n v. Texas Gulf Sulphur Co., 401 F.2d 833, 849 (2d Cir. 1968) (internal quotations omitted)).

Scienter is a "mental state embracing intent to deceive, manipulate or defraud." Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 n.12 (1976). The Second Circuit has held that a plaintiff may establish scienter by proof of a defendant's "conscious misbehavior or recklessness[.]" In re Scholastic Corp. Sec. Litig., 252 F.3d 63, 74 (2d Cir. 2001); Securities Exch. Comm'n v. United States Envtl., Inc., 155 F.3d 107, 111 (2d Cir. 1998); Sirota v. Solitron Devices, Inc.,

9

673 F.2d 566, 573 (2d Cir. 1982). "Representing information as true while knowing it is not, recklessly misstating information, or asserting an opinion on grounds so flimsy as to belie any genuine belief in its truth, are all circumstances sufficient to support a conclusion of scienter." Securities Exch. Comm'n v. Universal Express, Inc., 475 F. Supp. 2d 412, 424 (S.D.N.Y. 2007), aff'd sub nom. Securities Exch. Comm'n v. Altomare, 300 Fed. App'x 70 (2d Cir. 2008) (citing Rolf v. Blyth, 570 F.2d 38, 48 (2d Cir. 1978)). Entities as well as natural persons can be held liable under 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5. See Central Bank, N.A. v. First Interstate Bank, N.A., 511 U.S. 164, 191 (1994). Moreover, because a corporation "can only act through its employees and agents," an employee's or agent's scienter may be attributed to a corporate entity. Suez Equity Investors, L.P. v. Toronto-Dominion Bank, 250 F.3d 87, 100–01, 105 (2d Cir. 2001); Securities Exch. Comm'n v. Management Dynamics, Inc., 515 F.2d 801, 812–13 (2d Cir. 1975); Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc., 531 F.3d 190, 195 (2d Cir. 2008).

The "in connection with" requirement is satisfied if the misrepresentation "coincides" with a securities transaction. Securities Exch. Comm'n v. Zandford, 535 U.S. 813, 822-24 (2002); Superintendent of Ins. of the State of N.Y. v. Bankers Life & Cas. Co., 404 U.S. 6, 12-13 (1971).

Each of these elements is satisfied in this case and a default judgment is therefore warranted. The Complaint clearly alleges that, through Starkweather, Andiamo published a press release on a website that listed Andiamo's stock price and that misrepresented the existence of a smartphone developed by a wholly owned subsidiary. No such phone existed, which Starkweather, and therefore Andiamo, knew. Moreover, Andiamo is liable under the securities laws as a reasonable investor would have integrated Andiamo's misrepresentation into

10

the mix of information used to decide whether to invest in the company. In fact, investors appear to have relied on this false information, as evidenced by the fact that Andiamo's stock traded at an exponentially higher volume after the April 10, 2018 press release than it did before the press release, and by the fact that the company's share price rose after Andiamo published its misrepresentations. Moreover, Andiamo's fraud was committed in connection with the purchase and sale of stock. It was Starkweather's purpose to bolster interest in Andiamo through misrepresentations about the phone in order to increase Andiamo's stock price, as evidenced by the fact that Starkweather orchestrated a kickback scheme tied to the sale of Andiamo stock.

In addition, unlike those instances where courts have been hesitant to enter default judgment because there were potentially millions of dollars at stake, the amount of money involved in this case—the SEC's requested civil penalty of $150,000—is not significant. Cf. Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (declining to enter default judgment, in part because plaintiff's damages request ran "well into the millions of dollars," and giving defendant an opportunity to contest the entry of default).

Thus, given the well-pleaded allegations and Andiamo's representation that it does not intend to contest the default, the Court finds that default judgment is appropriate in this case.

C. Relief Sought

Having determined that plaintiff's Complaint sufficiently alleges facts that establish Andiamo's liability for violations of the securities laws and that a default judgment is appropriate in this matter, the Court now turns to the specific relief that the SEC seeks: (1) permanent injunctive relief and (2) a civil penalty.

11

   1. Permanent Injunction

The SEC seeks to permanently enjoin Andiamo from "violating, directly or indirectly, Section 10(b) of the Securities Exchange Act of 1934 . . . [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5]." (Proposed Default Judgment as to Andiamo Corporation at 2-3, attached as Ex. 15 to Krishnamurthy Decl., ECF No. 32-17). The SEC also asks that the injunction apply to "(a) Andiamo's officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Andiamo or with anyone described in (a)." (Id. at 3).

"Permanent injunctive relief is appropriate where a defendant has violated securities laws and there is a reasonable likelihood that [it] will do so again." Securities Exch. Comm'n v. Carrillo Huettel LLP, No. 13 CV 1735, 2017 WL 213067, at *6 (S.D.N.Y. Jan. 17, 2017), report and recommendation adopted, No. 13 CV 1735, 2017 WL 1162199 (S.D.N.Y. Mar. 28, 2017) (citing Securities Exch. Comm'n v. Commonwealth Chem. Sec., Inc., 574 F.2d at 99-100); 15 U.S.C. § 78u(d)(1) (stating that district courts "shall" impose injunctions as a consequence of violations of the securities laws "upon a proper showing"). In determining the likelihood of future violations, courts consider

> the fact that defendant has been found liable for illegal conduct; the degree of scienter involved; whether the infraction is an "isolated occurrence;" whether defendant continues to maintain that [its] past conduct was blameless; and whether . . . the defendant might be in a position where future violations could be anticipated.

Securities and Exchange Commission v. Commonwealth Chem. Sec., Inc., 574 F.2d 90, 100 (2d Cir. 1978) (quoting Securities and Exchange Commission v. Universal Major Indus. Corp., 546 F.2d 1044, 1048 (2d Cir. 1976)); see also Securities and Exchange Commission v. Carrillo Huettel LLP, 2017 WL 213067, at *6. The court may assess these factors using the facts alleged in a well-pleaded complaint. See, e.g., Securities Exch. Comm'n v. Syndicated Food Servs.

12

Int'l, Inc., No. 04 CV 1303, 2010 WL 4668777, at *1–2 (E.D.N.Y. Nov. 9, 2010); see also Securities Exch. Comm'n v. Rinfret, No. 19 CV 6037, 2020 WL 6559411, at *5 (S.D.N.Y. Nov. 9, 2020) (granting injunctive relief on a default judgment motion based on "the Commission's allegations, taken as true").

The SEC claims that each of the relevant factors favors entry of a permanent injunction as to Andiamo. (Pl.'s Mem. at 16-17). It argues that Starkweather's scienter, and therefore Andiamo's, is evidenced by the fact that Starkweather "intended to inflate Andiamo's stock price and knew the April 10 Press Release was false when it was issued." (Id.) The SEC further cites Judge Chen's finding by a preponderance of the evidence that Starkweather knew that the press release was misleading. (Id.) Moreover, Andiamo did not issue just one fraudulent press release—it issued a series of releases building up to the April 10, 2018 release, indicating that this was not an isolated incident. (Id. at 17). Andiamo has also defaulted and has not appeared in this matter, and thus has failed to take responsibility for its violations of the securities laws. (Id.) In addition, because Andiamo's stocks are still publicly traded, there is "a significant likelihood that Andiamo will violate the anti-fraud provisions again absent an injunction." (Id.)

The SEC neglects to address, however, the fact that Starkweather was replaced as the sole officer of Andiamo and Starkweather has been enjoined from serving as an officer in a company like Andiamo in the future. Thus, given the extent to which Andiamo's misconduct hinged on Starkweather's conduct while he held a position within the company, the likelihood that Andiamo will commit future violations has been mitigated by the consent judgment against Starkweather. Nevertheless, the balance of the facts alleged in the Complaint warrant issuing a permanent injunction here for the reasons articulated by the SEC. Andiamo's liability is not only clear, it failed to take responsibility for its misconduct or explain what measures have been taken

13

within the company to prevent future violations of the securities laws. Moreover, Andiamo is still a publicly traded company and thus in a position to commit future violations.

Therefore, this Court respectfully recommends that the District Court permanently enjoin Andiamo from future violations of the securities laws as articulated by the SEC in its proposed order. (See Proposed Default Judgment as to Andiamo Corporation at 2-3, attached as Ex. 15 to Krishnamurthy Decl., ECF No. 32-17).

  2. Civil Penalty

The federal securities laws permit courts to impose civil penalties for securities violations based on a three-tiered system. See 15 U.S.C. § 78u(d)(3)(B). A first-tier penalty is appropriate for any violation; a second-tier penalty is appropriate for a violation that involves "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement[;]" and a third-tier penalty may be imposed if, in addition to the requirements for a second-tier penalty, the "violation directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." 15 U.S.C. § 78u(d)(3)(B). For corporations, the maximum penalties, when adjusted for inflation, are as follows: $97,523 for first-tier penalties; $487,616 for second-tier penalties; and $975,230 for third-tier penalties per violation or the gross amount of the pecuniary gain to the offending entity from each violation, whichever is greater. 15 U.S.C. § 78u(d)(3)(B)(i)-(iii); 17 C.F.R. § 201.1001; see also United States Securities and Exchange Commission, Inflation Adjustments to the Civil Monetary Penalties Administered by the Securities and Exchange Commission (as of January 15, 2021), (Jan. 15, 2021), https://www.sec.gov/enforce/civil-penalties-inflation-adjustments.htm (listing the applicable penalty amounts as adjusted for inflation).

The Court has discretion to set the actual amount of the penalty within the applicable statutory limit.  Securities Exch. Comm'n v. Razmilovic, 738 F.3d 14, 38 (2d Cir. 2013); Securities Exch. Comm'n v. Kern, 425 F.3d 143, 153 (2d Cir. 2005).  The factors that courts may consider in exercising this discretion include:

> the egregiousness of the violations at issue, (2) defendants' scienter, (3) the repeated nature of the violations, (4) defendants' failure to admit their wrongdoing; (5) whether defendants' conduct created substantial losses or the risk of substantial losses to other persons; (6) defendants' lack of cooperation and honesty with authorities, if any; and (7) whether the penalty that would otherwise be appropriate should be reduced due to defendants' demonstrated current and future financial condition.

Securities Exch. Comm'n v. Lybrand, 281 F. Supp. 2d 726, 730 (S.D.N.Y. 2003).  By allowing such civil penalties, "Congress sought to achieve the dual goals of punishment of the individual violator and deterrence of future violations."  Securities Exch. Comm'n v. Moran, 944 F. Supp. 286, 296 (S.D.N.Y. 1996) (quoting H.R.Rep. No. 101–616, 101st Cong., 2d Sess., *reprinted in* 1990 U.S.Code Cong. & Admin. News 1379, 1384–86).  Moreover, as with determining the propriety of injunctive relief, the Court can base its determination on the well-pleaded allegations contained in the plaintiff's complaint.  See, e.g., Securities Exch. Comm'n v. Rinfret, 2020 WL 6559411, at *7; Securities Exch. Comm'n v. Weber, No. 18 CV 5019, 2020 WL 6798917, at *7 (E.D.N.Y. May 26, 2020).

The SEC argues that the Complaint's allegations, coupled with Judge Chen's findings during Starkweather's sentencing proceeding, "show that Andiamo knowingly and intentionally engaged in a securities fraud" at least once when it issued the April 10, 2018 press release, and that this fraud "created a significant risk of substantial losses to other persons"—namely, investors in Andiamo's stock who purchased shares after the April 10 press release.  (Pl.'s Mem. at 19).  This Court agrees—Andiamo's uncontested conduct constitutes at least a single violation

15

of the securities laws and warrants the imposition of a third-tier penalty for the reasons listed above in subpart (A)(1).

Although the Court is authorized to penalize Andiamo in an amount up to $975,230, the SEC asks that this Court impose a penalty of only $150,000. (Pl.'s Mem. at 19). The SEC asserts that "a $150,000 penalty is appropriate given that Andiamo's alleged fraud primarily involved a single false press release and did not result in any pecuniary gain to Andiamo." (Id.) A $150,000 penalty is reasonable considering the facts as articulated by the SEC, and thus this Court respectfully recommends that the District Court impose a penalty in that amount.

## CONCLUSION

For the aforementioned reasons, this Court respectfully recommends that the SEC's motion for default judgment be granted and its proposed Order adopted. It is recommended that Andiamo be permanently enjoined from future violations of the securities laws and that a civil penalty in the amount of $150,000 be imposed.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a), (e) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. See, e.g., Caidor v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

The SEC is Ordered to serve this Report and Recommendation on defendants and file an affidavit of service through the Electronic Case Filing system immediately. The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically

through the Electronic Case Filing system or by mail.

       **SO ORDERED.**

Dated: Brooklyn, New York
       October 27, 2021

                                          /s/ Cheryl L. Pollak
                                          Cheryl L. Pollak
                                          Chief United States Magistrate Judge
                                          Eastern District of New York